UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**TAMMIE A. HAWORTH,**   Chapter 7
    Debtor   Case No. 08-11780-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~

# MEMORANDUM

## I. INTRODUCTION

The matter before the Court is the "Motion of Trustee for Authority to Compromise Controversy and for Order Authorizing and Approving Intended Private Sale of the Interest of the Bankruptcy Estate in Real Estate Located at 989 Manila Street, New Bedford, MA Free and Clear of Liens, Claims and Interests in Settlement of Controversy" (the "Motion to Compromise"), through which he proposes to transfer the estate's interest in real property located at 989 Manila Street, New Bedford, Massachusetts (the "property") to Anna Machado ("Machado"), "subject to municipal liens and the Machado Mortgage, but free and clear of all other liens, claims and interests pursuant to 11 U.S.C. § 363(f)."[1]  Although the Trustee served the Motion to Compromise on all creditors, he did not solicit counteroffers.  Tammie A. Haworth (the "Debtor") filed

---

[1] The Trustee is not conveying any potential claim against U.S. Bank National Association for a wrongful foreclosure.

an Objection to the Motion. The Court heard the Motion and the Objection on March 4, 2016 and took the matter under advisement. At the hearing, counsel to Machado, Richard M. Serkey, Esq., submitted Machado's Affidavit, as well as his own Affidavit, which were part of the record in an action filed in the Bristol County Land Court, Department of the Trial Court, captioned, Machado v. U.S. Bank National Association, Case No. 15 MISC 000368. In addition to those Affidavits, the parties attached to their submissions several exhibits reflecting record title to the property. The Debtor also filed an Affidavit in support of her Objection to the Motion to Compromise.

The material facts necessary to decide the Trustee's Motion to Compromise are not in dispute, and neither party requested an evidentiary hearing.[2] Accordingly, the Court finds and rules as follows.

---

[2] The Court may take judicial notice of its own docket. *See* LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.), 196 F.3d 1, 8 (1st Cir. 1999) ("The bankruptcy court appropriately took judicial notice of its own docket."). The Court notes that in the Debtor's case, only three creditors filed proofs of claim and that those claims total approximately $700. The Trustee represented at the hearing that he has incurred legal fees of approximately $2,500 and would be entitled to a commission. Accordingly, this is a surplus case, and the Debtor has standing to object to the Motion to Compromise. *See* In re Choquette, 290 B.R. 183, 188–89 (Bankr. D. Mass. 2003)(although a Chapter 7 debtor is not normally a party in interest or a "party aggrieved" with standing to object to proofs of claim or settlements between the trustee and creditors of the estate, "'[t]here are two exceptions: (1) if the debtor can show that a successful appeal would generate assets in excess of liabilities, entitling the debtor to a distribution of surplus under Bankruptcy Code § 726(a)(6), 11 U.S.C. § 726(a)(6), . . . or (2) the order appealed from affects the terms of the debtor's discharge in bankruptcy."' Id. (quoting Kowal v. Malkemus (In re Thompson), 965 F.2d 1136, 1144, n. 12 (1st Cir.1992)). *See also* Aquino v. Curry (In re D'Amore), No. 04-10546-JNF, Adv. P. No. 04-1402, 2005 WL 3738963 (Bankr. D. Mass. Dec. 16, 2005).

**II. BACKGROUND**

The Debtor filed a voluntary Chapter 7 petition on March 14, 2008. Thereafter, Warren E. Agin was appointed the Chapter 7 Trustee. The Debtor filed Schedules of Assets and Liabilities as well as a Statement of Financial Affairs with her petition. On Schedule F-Creditors Holding Unsecured Nonpriority Claims, the Debtor listed "Chase Mortgage" represented by "U.S. Bank National Association" as the holder of a deficiency claim, described as "Mortgage Shortfall." On her Statement of Financial Affairs, she disclosed that the property had been foreclosed in May of 2007.

On April 14, 2008, the Chapter 7 Trustee filed a Report of No Distribution. Approximately two months later, on June 10, 2008, the Court entered an order of discharge. A few days later, on June 13, 2008, the Court closed the Debtor's bankruptcy case.

On November 5, 2015, the Debtor filed "Debtor's Motion to Reopen Case and to Amend Schedules A-D and Summary of Schedules," to which she attached the Affidavit of Richard C. Borges, Esq. attesting to the results of a title examination of the property, and amended Schedules A-H. In her Motion and on Amended Schedule A-Real Property, the Debtor represented that she held a contingent ownership interest in the property, together with Carlos A. Fernandes ("Fernandes") who filed his own Chapter 7 petition in the United States Bankruptcy Court for the District of Rhode Island and received a discharge. The Debtor further represented that the property was encumbered by a first mortgage to Mortgage Electronic Systems, Inc. ("MERS"), as Nominee for WMC Mortgage Corp., dated September 12, 2006, as well as a second mortgage to MERS, as

3

Nominee of WMC Mortgage Corp., neither of which has been discharged. She also averred that title to the property shows "an entry to foreclose mortgage and a Foreclosure Deed from U.S. Bank National Association (hereinafter "U.S. Bank") to U.S. Bank, dated June 1, 2007, which recites a purchase price of $216,365.65. . . ."[3] According to the Debtor, "[a] deed from U.S. Bank to U.S. Bank, Trustee [for JPMMAC 2006-WMC4], dated June 27, 2008 was recorded" and U.S. Bank, Trustee for JPMMAC 2006-WMC4 executed a Quitclaim Deed to Anna Machado ("Machado"), dated June 26, 2008, which was recorded on July 23, 2008. Subsequently, Machado obtained a mortgage on the property which, according to the Debtor, stands in the name of MERS as nominee for Sovereign Bank, N.A.

Attorney Borges substantiated the Debtor's representations in his Affidavit. He stated that the record title contained a first and second mortgage to MERS, as nominee for WMC Mortgage Corp., both dated September 12, 2006; a purported foreclosure of the first mortgage by U.S. Bank National Association, and the absence of a recorded assignment of mortgage from MERS, as nominee for WMC Mortgage Corp., to U.S. Bank National Association.

---

[3] On Amended Schedule D-Creditors Holding Secured Claims, the Debtor listed Chase Mortgage as the holder of a Contingent, Unliquidated, Disputed Claim in the amount of $250,000.00. She set forth the value of the property at $216,365.65, resulting in a deficiency of $33,634.35.

4

In addition to her other amended schedules, on amended Schedule B-Personal Property, the Debtor listed a "[p]otential contingent claim against U.S. Bank National Association for void foreclosure." She valued it at $0.00.

The Court granted the Debtor's Motion to Reopen on November 20, 2015. Warren Agin was reappointed as the Chapter 7 trustee.

In his Motion to Compromise, the Trustee recognized that the Debtor owned only a one-half interest in the property and that Fernandes owned the other half. The Trustee represented that he intended to sell only the Debtor's one-half interest in the property. He stated that, at the time of the purported foreclosure, the property was subject to a first mortgage with a principal amount of $200,000, and a second mortgage with a principal amount of $50,000, adding that the first mortgage was purportedly foreclosed, and the property sold at foreclosure for $216,365.65. He further stated, as did the Debtor, that at the purported foreclosure, the property was sold to U.S. Bank National Association, which subsequently sold it to "U.S. Bank National Association, Trustee for $1.00, which immediately thereafter sold the Real Estate to Machado for $155,000.00."

In addition to the mortgages executed by the Debtor and Fernandes, the Trustee recognized the existence of a mortgage granted by Machado to MERS on July 30, 2013, to secure a debt in the amount of $152,000.00 (the "Machado Mortgage"). According to the Trustee, the City of New Bedford assessed the property for $181,100 in 2015. In an Affidavit submitted in the Land Court, Machado represented that she was unaware of any title defects until she attempted to sell the property in June of 2015, stating: "As a result of a title search done for my buyer's lender, I learned for the first time from the

attorney for my buyer's lender that I was not in fact the record owner of the subject property, because of the *Ibanez* case."

In his Affidavit, Machado's counsel, Richard M. Serkey, Esq., represented that he attempted to find the unrecorded mortgage assignment from MERS, as nominee for WMC Mortgage Corp. to U.S. Bank National Association. He stated that he contacted Thomas V. Bennett, Esq., an attorney with the now closed firm of Barron & Stadfeld, P.C., who executed the Foreclosure Deed as Attorney-in-Fact for U.S. Bank National Association. According to Attorney Serkey, the file which might contain the assignment had been sent to an office in Louisiana and "[s]ubsequent efforts . . . to find the file from that office proved fruitless."

In his Motion to Compromise, the Trustee represented that Debtor's counsel contacted him, informing him that because of the Massachusetts Supreme Judicial Court decision in U.S. Bank, Nat'l Ass'n v. Ibanez, 458 Mass. 637, 941 NE 2d 40 (2011),[4] title to

---

[4] In Bevilacqua v. Rodriguez, 460 Mass. 762, 772, 955 N.E.2d 884, 892-93 (2011), the Supreme Judicial Court stated:

> As we recently held in the Ibanez case, Massachusetts "adhere [s] to the familiar rule that 'one who sells under a power [of sale] must follow strictly its terms,'" so where a foreclosure sale occurs in the absence of authority, "there is no valid execution of the power, and the sale is wholly void." U.S. Bank Nat'l Ass'n v. Ibanez, 458 Mass. 637, 646, 941 N.E.2d 40 (2011), quoting Moore v. Dick, 187 Mass. 207, 211, 72 N.E. 967 (1905). "One of the terms of the power of sale that must be strictly adhered to is the restriction on who is entitled to foreclose." U.S. Bank Nat'l Ass'n v. Ibanez, *supra* at 647, 941 N.E.2d 40. See Bongaards v. Millen, *supra*. By alleging that U.S. Bank was not the assignee of the mortgage at the time of the purported foreclosure, Bevilacqua is necessarily asserting that the power of sale was not complied with, that the purported sale was invalid, and that his grantor's title was defective. See U.S. Bank Nat'l Ass'n v. Ibanez, *supra*. In light of its defective

6

the property might remain in the names of the Debtor and Fernandes, with the Debtor's one-half interest owned by the bankruptcy estate. He added that Debtor's counsel asserted that the Debtor would have a right to possession as against Machado, and that the Debtor wanted to pursue such claim for possession of the property against Machado. He conceded, however, at the hearing held on March 4, 2016 that the Debtor lacked the resources to acquire the estate's interest, although he represented that she had a family member who would "purchase the property."

In his Motion to Compromise, the Trustee represented that he investigated the nature of the estate's interest in the property, and concluded that the estate holds a one-half interest in the property, subject to rights of prior lienholders. He added:

> The rights of the prior first mortgage, purportedly foreclosed, to the extent the Real Estate remains subject to that mortgage, are held by Machado by virtue of the doctrine of subrogation. The Trustee also noted that on September 17, 2015, Machado filed an action to quiet title in the Land Court, Case No. 15 MISC 000368.

According to the Trustee he received an offer from Machado to settle her dispute with the estate. He disclosed that Machado offered to pay the estate $7,500, for the transfer to her of "the Debtor's remaining right, title and interest in said Real Estate (the "Asset") free and clear of all liens (other than municipal liens and the Machado mortgage), claims and interests. The transfer of the Asset would be subject to municipal

---

title, the intention of U.S. Bank to transfer the property to Bevilacqua is irrelevant and he cannot have become the owner of the property pursuant to the quitclaim deed.

Bevilacqua v. Rodriguez, 460 Mass. at 772, 955 N.E.2d at 892-93.

liens and Machado's Mortgage, but free and clear of all other liens and interests pursuant to 11 U.S.C. § 363(f) (the "Transfer")." According to the Trustee, "[t]he lien represented by the purportedly foreclosed first mortgage, and currently held by Machado by right of subrogation, would attach to the $7,500, and the Trustee would retain those funds for the benefit of the estate as a carve-out." The Trustee added: "On entry of a final order, in a form acceptable to Machado, approving this motion, the Trustee shall execute and deliver to Machado a deed in a form acceptable to her, and receive the $7,500.00."

### III. POSITIONS OF THE PARTIES

A. The Trustee

The Trustee maintains that he has satisfied the standards for approval of a compromise under Jeffrey v. Desmond, 70 F.3d 183 (1st Cir. 1995), because he considered

> (i) the probability of success in the litigation being compromised; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay attending it; and, (iv) the paramount interest of the creditors and a proper deference to their reasonable views in the premise.

Id. at 185 (citing In re Anolik, 107 B.R. 426, 429 (D. Mass. 1989)). He stated the following:

> The Trustee has essentially three options in the present case. First, the Trustee could litigate over ownership of the Real Estate, either in the Land Court or in the bankruptcy court. The Trustee has previously analyzed the likelihood of success of generating a net benefit to an estate by actively litigating over ownership after a defective foreclosure, where the real estate has no equity above prior mortgages. The Trustee has concluded that in such cases the defendants would strongly oppose the Trustee's claims, the likelihood of success after trial is low, and the likelihood of a settlement exceeding litigation costs is likewise low. Second, the Trustee could settle quickly with the current homeowner. The Trustee's experience is that a settlement can be reached to allow the current homeowner to avoid a contested Land Court proceeding. This situation does occur frequently enough for a practice to have developed, and $7,500 is a settlement amount

that has been approved in prior such cases. Finally, the Trustee could file a no asset report in the case, which generates no funds for creditors.

B. The Debtor

The Debtor indicated in her Objection that, at an unspecified time, she obtained property insurance for the property believing it to be vacant after learning that the foreclosure sale was likely void. She stated that after the wrongful foreclosure sale she and her three children were homeless for several weeks, living in a van until they were able to find a home in an unimproved basement for months. She also stated that she discovered through Machado's counsel that "she was still the owner" and "hoped to move back into the property until title matters were settled." She represented that she refused a settlement proffered by Machado, noting that she had incurred "more than $25,000 in various attorney legal fees, moving costs, legal court fees, defense fees for [her] ownership compliance requirements." She indicated that the compromise and sale resulted in "too little" in proportion to her suffering and expenses, adding that "she is entitled to sufficient proceeds from the sale or from the defendant's bank [sic] to at least cover hers costs to be reimbursed from available assets of the bankruptcy estate." In addition, she requested that the Trustee be ordered to file an action against the foreclosing entity to recover sufficient damages to reimburse her for her costs, as well as her pain and suffering.

**IV. DISCUSSION**

The issues arising from the Trustee's Motion to Compromise are not uncommon. Not only did the collapse of the subprime residential mortgage

9

industry precipitate the so-called "Great Recession," the after effects continue to linger due to sloppy lending practices, including the absence of assignments from the original mortgagee to the foreclosing entities, resulting in defective foreclosures. *See generally* Bailey v. Wells Fargo Bank, N.A. (In re Bailey), 468 B.R. 464 (Bankr. D. Mass. 2012). Moreover, securitization of subprime mortgages has generated complex litigation involving mortgages, servicing rights, and representations made in the context of pooling agreements. *Cf.* WMC Mortg., LLC. v. J.P. Mortg. Acquisition Trust 2006-WMC 4 ex. Rel. U.S. Bank. Nat'l Ass'n, No. CIV. 12-3146, 2013 WL 3808004 (D. Min. July 22, 2013).[5]

---

[5] In the case cited, the court, demonstrating the complexity of the various transactions, stated the following:

> This matter is before the Court on a Motion to Dismiss brought by Defendant U.S. Bank National Association ("U.S.Bank"), acting solely in its capacity as Trustee pursuant to a Pooling and Servicing Agreement ("PSA") dated December 1, 2006 (the "Trustee"). For the reasons set forth below, the Court grants the motion. . . . J.P. Morgan Mortgage Acquisition Trust 2006–WMC4 (the "Trust") was formed as part of a residential mortgage backed security transaction (the "Securitization") in which the Trust took title to thousands of mortgage loans originated by Plaintiff WMC Mortgage, LLC ("WMC"). The Securitization was sponsored by J.P. Morgan Mortgage Acquisition Corp. ("JP Morgan") and secured by JP Morgan Chase Bank, N.A. . . . WMC sold various mortgage loans, including the right to service the loans, to JP Morgan, pursuant to a Mortgage Loan Sale and Interim Servicing Agreement dated July 1, 2005 (the "MLSA"). As part of the MLSA, WMC made certain representations and warranties concerning the loans, and granted JP Morgan a repurchase remedy in the event that certain conditions were met. In or around December 2006, JP Morgan sold the Subject Loans, including the rights acquired under the MLSA (and therefore the right to repurchase), to J.P. Morgan Acceptance Corporation I ("JPMAC"), pursuant to an Assignment, Assumption and Recognition Agreement dated December 20, 2006 (the "AARA"). JPMAC later sold all rights, title, and interest in the Subject Loans, including its rights under the

In the instant case, the present inability to locate an assignment from MERS, as nominee for WMC Mortgage Corp., to U.S. Bank National Association may render the foreclosure sale void. *See* U.S. Bank, Nat'l Ass'n v. Ibanez, 458 Mass. 637, 941 NE 2d 40 (2011)("where a foreclosure sale occurs in the absence of authority, 'there is no valid execution of the power, and the sale is wholly void.'"). Until it is indisputably established that an assignment does not exist, the status of the foreclosure sale and Machado's title are in doubt. Where it appears that the mortgages executed by the Debtor and Fernandes were not discharged, those mortgages affect what equity, if any, the Debtor would have in the property. In addition, Machado would be equitably subrogated to the foreclosing entity for the price she paid to purchase the property or the amount of the mortgage she obtained on the property. *See* Provident Co–Operative Bank v. James Talcott, Inc., 358 Mass. 180, 188, 260 N.E.2d 903 (1970). As this Court observed in Noone v. St. Cyr (In re Noone), 188 B.R. 710, 712 (Bankr. D. Mass. 1995), citing Talcott, "'[s]ubrogation is the substitution of one person in place of another, whether as a creditor, or as the possessor of any other rightful claim, so that he who is substituted succeeds to the rights of the other

---

    MLSA, to the Trust, pursuant to the terms of the PSA, which was between JPMAC (as Depositor), J.P. Morgan (as Seller), JP Morgan Chase Bank (as Servicer), The Bank of New York ("BNY") (as Securities Administrator), and U.S. Bank (as Trustee).

WMC Mortgage, LLC v. J.P. Morgan Mortgage Acquisition Trust 2006-WMC4 ex rel. U.S. Bank Nat'l Assoc., No. CIV. 12-3146 DWF/AJB, 2013 WL 3808004, at *1 (D. Minn. July 22, 2013). While there is no evidence that the parties in the Minnesota litigation are the same as those present in the instant case, the Court notes the similarity in the names, particularly as U.S. Bank National Association as Trustee for JPMMAC 2006-WMC4 executed the Quitclaim Deed to Machado.

in relation to the debt or claim, and its rights, remedies, or securities.'" In re Noone, 188 B.R. at 712 (citing Talcott, 358 Mass. at 188).  See also East Boston Savs. Bank v. Ogan, 428 Mass. 327, 701 N.E.2d 331 (1998)(court's equitable powers allowed it to apply doctrine of equitable subrogation to give new mortgage same priority which mortgage for existing obligation enjoyed in connection with sale of property);[6] In re Flamingo 55, Inc., 378 B.R. 893, 906 (Bankr. D. Nev. 2007), *aff'd as modified*, 646 F.3d 1253 (9th Cir. 2011)("subrogation

---

[6] In Ogan, the Supreme Judicial Court observed:

> Equitable subrogation is an exception to the basic principle that determines priority among mortgages, "first in time is first in right." Where equitable subrogation applies:
>
>> "One who fully performs an obligation of another, secured by a mortgage, becomes by subrogation the owner of the obligation and the mortgage to the extent necessary to prevent unjust enrichment. Even though the performance would otherwise discharge the obligation and the mortgage, they are preserved and the mortgage retains its priority in the hands of the subrogee."
>
> Restatement (Third) of Property (Mortgages) § 7.6(a) (1997). In other words, the new mortgage held by a mortgagor, who used the proceeds of the new mortgage to extinguish an earlier mortgage, may receive the same priority once given to the earlier mortgage.
>
> Before equitable subrogation applies, a court must determine: "(1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt paid, (4) the subrogee paid off the entire encumbrance, and (5) subrogation would not work any injustice to the rights of the junior lienholder." Mort v. United States, 86 F.3d 890, 894 (9th Cir. 1996), citing Han v. United States, 944 F.2d 526, 529 (9th Cir.1991). It is "a broad equitable remedy" and, depending on the individual case, it may apply even where one or more of these factors is absent. Mort, *supra*.

Ogan, 428 Mass. at 329-30, 701 N.E.2d at 334 (footnote omitted).

is essentially an equitable assignment of a claim, made without regard to whether the claim assigned has actually been discharged at law. It "does not spring from contract although it may be confirmed or qualified by contract. . . . [I]t is a rule that the law adopts to compel the eventual satisfaction of an obligation by the one who ought to pay it." RESTATEMENT (THIRD) OF SURETYSHIP AND GUAR. § 27, cmt. a (1996)).

In view of the difficulties associated with litigating the Debtor's interest, if any, in the property, the status of the various liens on the property, the expense associated with determining the value of the estate's interest, and the paramount interests of creditors, this Court concludes, consistent with the decision in Whispering Pines Estates, Inc. v. Flash Island, Inc. (In re Whispering Pines Estates, Inc.), 370 B.R. 452 (B.A.P. 1st Cir. 2007), that it should defer to the Trustee's business judgment with respect to his proposed compromise. In Whispering Pines, the panel stated:

> While the Jeffrey standard may be a useful starting point, we note that the Jeffrey standard is structured to accord deference to a trustee's judgment by reviewing that judgment only for abuse of discretion. Hill v. Burdick (In re Moorhead Corp.), 208 B.R. 87, 89 (1st Cir. BAP 1997) ("The judge, however, is not to substitute her judgment for that of the trustee, and the trustee's judgment is to be accorded some deference."), aff'd, 201 F.3d 428 (1st Cir.1998); In re 110 Beaver Street Partnership, 244 B.R. 185, 187 (Bankr. D. Mass. 2000) ("[T]he Court will defer to the trustee's judgment and approve the compromise, provided the trustee demonstrates that the proposed compromise falls within the 'range of reasonableness' and thus is not an abuse of his or her discretion.").

Id. at 461. *See also* Hicks Muse & Co. v. Brandt (In re Healthco Int'l, Inc.), 136 F.3d 45, 50 n.5 (1st Cir. 1998); Crawford v. Riley (In re Wolverine, Proctor & Schwartz, LLC), 436 B.R. 253, 266 (D. Mass. 2010). Here, the Trustee negotiated and proposed the settlement in an arm's length transaction. This Court shall not disturb his reasoned judgment.

13

The Debtor's objection is overruled. Although the Trustee did not solicit counteroffers, the Debtor neither expressly stated that she would be in a position to make a counteroffer for her interest in the property that would account for either her mortgages or the mortgage obtained by Machado. The value of her interest is not simply $7,500, the amount Machado has offered the Trustee. Rather, Machado's offer must be considered to include additional consideration in the nature of a credit bid for the existing mortgage she obtained on the property. In this regard, were the Trustee to obtain a determination that the mortgage foreclosure was void, the mortgages on the property obtained by the Debtor and Fernandes would be extant and the value of Machado's equitable subrogation rights arising from her purchase of the property and her mortgage to MERS would have to be determined by this Court. In any event, as the Trustee recognized, there would be no equity in the property for the benefit of the bankruptcy estate if the foreclosure sale was determined to be void. Although the Trustee is conveying the property free and clear of liens, claims, and interests to Machado, the settlement of the controversy was paramount, and the Trustee has established that the settlement is in the best interests of the creditors of the estate whose claims total approximately $700.

## V. CONCLUSION

In view of the foregoing, the Court shall enter an order granting the Trustee's Motion to Compromise.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: May 4, 2016